(No. 17378.—Judgment affirmed.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN GASKILL, Plaintiff in Error.

*Opinion filed June 16, 1926—Rehearing denied October 12, 1926.*

1. CRIMINAL LAW—*what evidence of robbery is admissible in a prosecution for receiving stolen property.* One of the necessary elements of the crime of receiving stolen property is that the property has, in fact, been stolen by someone other than the one charged with receiving it, and in a prosecution for receiving property constituting part of the proceeds of a robbery it is not improper, as incidents of the necessary story of the robbery, to show that it was committed at the point of a gun and that other property was taken than that which the defendant is charged with having received.

2. SAME—*when it is not improper for State's attorney to use slang in argument.* In a prosecution for receiving stolen property which had been taken at the point of a gun, it is not improper for the State's attorney, in his argument, to use such words as "stick up," "fence," "hot stuff" and "dough," where such expressions were used by the witnesses in their testimony and are used in the same manner in the argument.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. MARCUS A. KAVANAGH, Judge, presiding.

W. G. ANDERSON, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and FRANK R. EAGLETON, (EDWARD E. WILSON, and LOUIS N. BLUMENTHAL, of counsel,) for the People.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

Plaintiff in error was convicted in the criminal court of Cook county of the crime of receiving stolen property. He brings the cause here for review, contending that the court erred in the admission of testimony and the amendment of an instruction submitted by him, and contends that the verdict is not justified by the evidence.

The charge contained in the indictment is that on or about March 2, 1925, plaintiff in error feloniously and for his own gain, and to prevent the owner from again possessing certain property, did buy, receive and aid in concealing eight rings, of the value of $50, then and there well knowing said goods to have been feloniously stolen.

The facts as shown by the witnesses for the People are, that on January 26, 1925, the jewelry store of Cecil J. Fishbein, in the city of Chicago, was robbed. Proof of the robbery was made by Fishbein, Harold Kennedy and George Casey, the latter two being accomplices in the robbery. Kennedy testified to the sale of the eight rings to plaintiff in error. Fishbein testified that a quantity of diamonds, watches and jewelry, amounting to about $50,000, was taken from his store. He also testified that Kennedy, Casey and one Scott were among the men who robbed the store and that they were armed with a gun; that this occurred on the morning of the 26th of January; that they took about thirty-seven diamond rings. Two rings were shown him while on the witness stand, and he identified them as two of the diamond rings taken in the robbery.

He testified that the larger of the two cost him $22.50 and the second about $18 or $20, wholesale.

Kennedy testified that on the morning of the robbery, he, with Carter Scott, Casey and Arthur Schilling, robbed the Fishbein store by the use of a gun; that he (Kennedy) received eight rings as his part of the plunder, and that the two rings in evidence were among the lot; that about three days prior to the morning of the robbery he and Scott were in the store of plaintiff in error, Gaskill; that Scott discussed with Gaskill the purchase of a revolver but that no gun was purchased; that on another occasion before the robbery he went to Gaskill's place in company with a number of others who went into the store and had a conversation with Gaskill but that he (Kennedy) remained in the car outside; that on the afternoon of the day of the robbery he again saw Gaskill at his store and told him that he was one of the men who were to bring the rings; that he had eight rings, which was his share, and that Gaskill said to him, "Is this from an out-of-town job?" to which he replied that it was; that he told Gaskill he wanted $300 for them; that Gaskill replied he would take them to a buyer and find out what he could get for them, and suggested that he (Kennedy) remain in the store until his return; that after a while he called Kennedy at the store and told him all he could get was $100, and that Kennedy told him to accept that offer; that when Gaskill returned to his store he gave Kennedy the $100, and that Kennedy gave him $5 for his trouble.

Casey testified that he was present at the time of a conversation with Gaskill, accompanied by a man by the name of Jack Rose and another named Cherborn; that Rose and Cherborn talked to Gaskill and later called the witness over, and Cherborn said, "Now, there should be anywheres from twenty-one to thirty diamonds in there, and watches and things, and our friend Gaskill is going to buy them;" that Gaskill said he would buy anything up to "fifty grand," the

witness explaining that "grand" meant $1000; that Gaskill also said, "You can bring them to me at any time at all; it makes no difference to me." This witness testified that this conversation took place prior to the Fishbein robbery.

Gaskill testified that he ran a general store and hardware store and that he kept a small line of cheap jewelry; that the class of people in the neighborhood of his store were colored people and poor people; that he did not know the witness Casey, and that the first time he saw Kennedy was in February, 1925; that Kennedy came in representing himself as a salesman and wanted to know if the witness was interested in clocks or watches, and finding that he was not, asked him if he could use some small, cheap rings; that upon looking at the rings Kennedy offered to sell them to him for $150, but that he told him he would give him $100 for them, and that the trade was made at that figure; that Kennedy had a few catalogues of clocks with him, but that the catalogues had no name on them and he did not know whom Kennedy claimed to be representing; that he afterwards sold the rings for from $25 to $30 a piece to different customers; that he did not know that the rings were stolen or were the proceeds of a robbery. He also denied having a conversation with the other parties referred to by Kennedy and Casey, saying: "No, I do not recall of any conversation when several young men drove out in an automobile and several came into my store and discussed with me the acquisition by me of some proceeds of a robbery they were contemplating." He testified that he had not heard of the Fishbein robbery until the time of his arrest, at the police station.

Hugo H. Miller, a police officer, testified that on March 3, 1925, he had a conversation with Gaskill following the arrest of Scott, Schilling, Kennedy and one Meske; that in the presence of Gaskill, sergeant Sheahan and the witness, Gaskill was asked where the rings were, and he replied that he had taken them over to one Deicola, who, apparently,

from the evidence, was also one of the participants in the robbery; that they then took Kennedy and Gaskill over to the place where Deicola was said to be and that Gaskill went in to bring out Deicola, but when he came out said the man was not in; that he didn't know when he would be in, but that he (Gaskill) would deliver the rings at the station; that on the following morning he came to the station and handed two rings to Sheahan. The witness identified the rings in evidence as being the rings returned by Gaskill.

The principal contention of plaintiff in error is that the evidence does not show knowledge that the goods were stolen, and in support of this contention it is urged that Kennedy and Casey are self-confessed criminals and accomplices in the robbery in which the property was stolen; that Kennedy had pleaded guilty and was put on probation, and stated that it was his understanding that he was to testify for the State against all the other participants in the robbery; that Casey had stated that he would plead guilty, and that while no promise of immunity had been given him, he was expecting to be shown leniency by reason of his testimony. While the rule is that a conviction may be sustained on the uncorroborated testimony of an accomplice or accomplices, if the record consisted only of the testimony of Casey and Kennedy we would hold the proof of knowledge that the goods were stolen was insufficient. The testimony of Gaskill, however, does not agree with his statement made to the officers at the time of his arrest. He testifies that he sold these rings for from $25 to $30 each, to different persons. Officer Miller testifies that he told him that he had taken them to Deicola, who, it seems, was in some way involved in the robbery and who had either pleaded guilty or had been convicted. The record shows that Gaskill's store is in what he characterized as a "poor neighborhood," among poor people, and it seems hardly credible that he would, in the comparatively few days in

which he had the rings, dispose of all of them in that neighborhood at regular retail sales. The question of knowledge was for the jury, and considering the inconsistency of his statements on the witness stand with those made to the officer, we cannot say that the jury were not justified in disbelieving his testimony. While the testimony of Casey and Kennedy is entitled to little weight, the facts are undisputed that the robbery took place and that Gaskill bought the rings. We cannot say, upon review of the whole evidence, that there is a reasonable doubt as to his knowledge that the goods were stolen.

It is also objected that the court erred in permitting a detailed story of the robbery to be told on the witness stand, in which the amount of the property taken was shown and in which the robbery was shown to have taken place by the use of a gun. It is also objected that it was improper to refer to the taking of other property beside the rings in question. One of the necessary elements of the crime of receiving stolen property is that the property has, in fact, been stolen by someone other than the one charged with receiving it. (*People* v. *Prall*, 314 Ill. 518.) That other property was also taken and that the robbery was committed at the point of a gun were but incidents of the necessary story of the robbery. We are unable to see wherein this testimony was prejudicial to the plaintiff in error. It is not contended that he had anything to do with the robbery. We find no reversible error in the admission of testimony.

Complaint is also made of the modification of an instruction offered by plaintiff in error, but upon examination of the series of instructions given we are satisfied that no error was committed in instructing the jury.

It is complained that the State's attorney erred to the prejudice of plaintiff in error by using such words as "stick up," "fence," "hot stuff" and "dough," it being urged that such words were underworld parlance and their use tended

to inflame the minds of the jury. The words, while not choice language, appear in the testimony of the witnesses and it was not error for the prosecuting attorney to use them in the manner in which they were used, and we see no prejudice to plaintiff in error thereby.

There is no reversible error in the record, and the judgment will be affirmed.                    *Judgment affirmed.*